David D. Lin (*pro hac vice* forthcoming)
david@iLawco.com
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Fornix Holdings LLC
and CP Productions, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Fornix Holdings LLC; and CP Productions, Inc.,** | Case No. |
| *Plaintiffs*, | |
| v. | |
| **John Doe #1 d/b/a pornez.net; John Doe #2 d/b/a cumgloryhole.com; John Doe #3 d/b/a hqcollect.net,** | |
| *Defendants*. | |

**Memorandum of Points and Authorities in Support of Plaintiffs'
*Ex Parte* Application for a Temporary Restraining Order,
Order To Show Cause for Preliminary Injunction, and
Order to Allow Alternative Service**

1

# TABLE OF CONTENTS

**Preliminary Statement** .............................................................................................1

**Factual Background** ...............................................................................................1

    I.    Plaintiffs' Business and Intellectual Property ......................................1

    II.    Defendants' Illegal Activities ...............................................................2

        A.    Defendant PornEZ's Infringing Conduct ...................................3

        B.    Defendant CGH's Infringing Conduct .......................................4

        C.    Defendant HQC's Infringing Conduct .......................................5

        D.    Harm to Plaintiffs .......................................................................6

**Argument**...............................................................................................................7

    I.    Plaintiffs Have Met the Legal Standard for an *Ex Parte* TRO ...........7

        A.    Plaintiffs Are Likely to Succeed on the Merits..........................8

        B.    Plaintiffs Are Likely to Suffer Irreparable Harm Absent a TRO...........12

        C.    The Balance of Equities Strongly Favors Plaintiffs..............14

        D.    A TRO Is in the Public Interest.................................................15

        E.    An *Ex Parte* TRO is Appropriate.............................................16

        F.    Minimal Security Should be Required by Plaintiffs ..............18

    II.    The Court Should Allow Alternative Service for Defendants .........18

**Conclusion** ..........................................................................................................**20**

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 892 P.2d 1354 (1995) ................................8

4
*A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ....................................10

5
*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ...........................8

6
*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir.1999)................................................18

7
*BMO Harris Bank, N.A. v. Guthmiller*, No. CV-14-00275-PHX-JAT, 2014 WL 2600362 (D. Ariz. June 10, 2014) ..................................................................................................19

8
*Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957 (2016)................10, 13, 15

9
*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011)...............12

10
*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) .........................................................7

11
*Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000) ............................................................18

12
*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007) ..................8

13
14
*Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-0280-PHX-LOA, 2011 WL 7430062 (D. Ariz. Mar. 3, 2011) ....................................................................................20

15
*LNS Enterprises LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065 (D. Ariz. 2020)...........8

16
*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ..........................9

17
*Merch. Transaction Sys., Inc. v. Necela, Inc.*, No. 02-1954-PHX-MHM, 2010 WL 330346 (D. Ariz. Jan. 21, 2010) ....................................................................................7

18
19
*Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012) ...........................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146,(9th Cir. 2007) .............................11

20
*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir.2006) ............................7

21
*Rio Props. V. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .................................19, 20

22
*Small v. Avanti Health Sys., LLC*, 661 F.3d 1180 (9th Cir. 2011) ...................................12

23
*Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995) .....................................................................................14

24

ii

*Trial Film LLC v. Wu Daoai*, No. CV-21-00984-PHX-JJT, 2021 WL 2949508 (D. Ariz. July 14, 2021) ................................................................................................15, 16

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) ...................10

**Statutes**

17 U.S.C. § 107....................................................................................................................11

17 U.S.C. § 410(c)...............................................................................................................10

17 U.S.C. § 501(b)...............................................................................................................10

28 U.S.C. § 1400(a) ...............................................................................................................9

Ariz. R. Civ. P. 4.2(a) ...........................................................................................................8

Fed. R. Civ. P. 4(f)..............................................................................................................19

Fed. R. Civ. P. 65(c) ...........................................................................................................18

iii

# PRELIMINARY STATEMENT

Plaintiffs Fornix Holdings LLC ("Fornix") and CP Productions, Inc. ("CP Productions," collectively with Fornix as "Plaintiffs") are Arizona companies that create and manage adult entertainment content. Defendant John Doe #1 d/b/a pornez.net ("PornEZ"), Defendant John Doe #2 d/b/a cumgloryhole.com ("CGH"), and Defendant John Doe #3 d/b/a hqcollect.net ("HQC," collectively with PornEZ and CGH as "Defendants") have perpetrated a deliberate and brazen campaign of infringement on Plaintiffs' copyrighted content, reposting the scores of full-length videos on their own sites for profit. Defendants have purposefully hidden their identities, blatantly and repeatedly infringed Plaintiffs' copyrights, and disregarded thousands of takedown notices. Accordingly, Plaintiffs request a TRO disabling the websites, a show cause hearing why the TRO should not be converted into preliminary injunction, and an order allowing for alternative service.

# FACTUAL BACKGROUND

## I.    Plaintiffs' Business and Intellectual Property

Fornix is an Arizona corporation specializing in media content management, while CP Productions is an Arizona Corporation that promotes and distributes adult entertainment content. Compl. ¶¶ 11–12, Graves Decl. ¶¶ 2–3. Since 2011, CP Productions has operated <gloryholeswallow.com> ("GHS Website") to distribute its works. Compl. ¶ 26; Graves Decl. ¶ 6. The GHS Website is the exclusive channel through which CP Productions distributes its full-length videos. *Id.*

Currently, CP Productions has produced and distributed 1,125 videos on the GHS Website ("Works"). Compl. ¶ 27. Fornix prosecutes, manages, and protects the copyrights in these Works. Compl. ¶ 28. As of today, Fornix has registered copyrights for

1

234 of the Works ("Registered Works"). Compl. ¶ 30, Exh. A. Fornix is seeking copyright registration for the remaining 891 Works and will continue seeking protection for works produced by CP Productions in the future. Compl. ¶ 31. Fornix exclusively licenses the Works to CP Productions to use and distribute via the GHS Website. Compl. ¶ 32; Graves Decl. ¶ 9.

To access Plaintiffs' full-length video content on the GHS Website, a visitor must create an account and pay for a subscription to become a member. Compl. ¶¶ 33–36. Only those with paid memberships can access unlimited full-length, high-resolution videos and full collections of photographs on the GHS Website. Compl. ¶ 35. Moreover, Plaintiffs prohibit unauthorized redistribution of their content and include a "warning" announcement at the beginning of every video displaying copyright ownership information and stating: "It's illegal to share!" Compl. ¶ 39. Plaintiffs use non-party copyright enforcement agents to monitor for the Works and copyright infringement across the Internet. Compl. ¶ 40; Graves Decl. ¶ 10.

## II.    Defendants' Illegal Activities

Without authorization, Defendants have been copying the Works, creating derivative versions, and displaying and distributing them through their websites located at <pornez.net> ("PornEZ-Net"), <cumgloryhole.com> ("CGH-Com"), and <hqcollect.net> ("HQC-Net") (collectively, "Infringing Websites"). Compl. ¶ 6–8. The underlying domain names of the Infringing Websites, namely <pornez.net>, <cumgloryhole.com>, and <hqcollect.net> are collectively referred to as the "Domain Names."

All of the Infringing Websites have top-level domains controlled by VeriSign, Inc. ("VeriSign"), the top-level registry for all ".com" and ".net" domain names. Compl. ¶¶ 43, 61, 81. VeriSign is responsible for maintaining and propagating the following

2

information for these domains: (i) the domain name, (ii) zone files that contain the IP addresses of the primary and secondary name server for that domain name, (iii) the name of the registrar for the domain name, and (iv) domain owner (registrant) information. Lin Decl. ¶ 8. If needed, VeriSign has the right and ability to put a domain name on "serverHold" or "server TransferProhibited" status and revoke access to a ".com" or ".net" domain name, rendering it "inactive." *Id.* PornEZ-Net and CGH-Com use the services of Cloudflare, Inc. ("Cloudflare"), which provides content delivery network ("CDN"), reverse-proxy, security, and other services. *Id.* ¶ 9. If needed, Cloudflare has the right and ability to cease its services to PornEZ-Net and CGH-Com. *Id.* Similarly, HQC-Net uses the services of ClouDNS Ltd. ("ClouDNS"), which provides similar CDN, reverse-proxy, security, and other services, and if needed, ClouDNS has the right and ability to cease its services to HQC-Net. *Id.* ¶ 10.

## A. Defendant PornEZ's Infringing Conduct

Since at least 2021, PornEZ has been promoting and distributing unauthorized copies of Plaintiffs' Works via PornEZ-Net. Compl. ¶ 46; Graves Decl. ¶ 14. A search on PornEZ-Net with Plaintiffs' trade name, "Gloryhole Swallow," returns more than four hundred (400) links displaying or directing to infringing copies of Plaintiffs' videos. Compl. ¶ 47; Graves Decl. ¶ 21. PornEZ's infringing conduct did not come to Plaintiffs' attention until early 2023, when PornEZ-Net started to pick up more viewer traffic with its growing collection of Plaintiffs' Works and divert more viewers from the GHS Website. Compl. ¶ 46; Graves Decl. ¶ 14.

PornEZ's infringement of Plaintiffs' Works has been brazen and willful. Although Plaintiffs have sent hundreds of takedown notices to PornEZ-Net through the contact email addresses of the site or its Internet service providers, including dmca@pornez.net,

abuse@privatelayer.com, and abuse@namecheap.com, they have never received a
response. Graves Decl. ¶ 20. Moreover, Plaintiffs do not know PornEZ's true identity.
PornEZ masks the registration information for the PornEZ Domain Name ("WHOIS
data") with privacy services. Compl. ¶ 45; Lin Decl. ¶ 5. Thus, despite Plaintiffs'
enforcement efforts, 405 links remain live, allowing visitors of PornEZ-Net free and
unauthorized access to many of the Registered Works. *See* Graves Decl. ¶ 21.

### B. Defendant CGH's Infringing Conduct

Since at least 2022, CGH has been promoting and distributing unauthorized copies
of Plaintiffs' Works via CGH-Com. Compl. ¶ 64; *see* Graves Decl. ¶ 22. CGH's
infringing conduct did not come to Plaintiffs' attention until early 2023, when CGH-Com
started to pick up more viewer traffic with its growing collection of Plaintiffs' Works and
divert more viewers from the GHS Website. *Id.*

CGH-Com has multiple ways to locate Plaintiffs' works by their trade name
"Gloryhole Swallow," including a search bar allowing viewers to freely search Plaintiffs'
Works, and a "Latest" button that directs to a page displaying Plaintiffs' Works among
other videos. Compl. ¶¶ 65, 66. As of the day of this filing, CGH-Com contains at least
586 videos of Plaintiffs' Works, many of which are Registered Works. Compl. ¶ 67;
Graves Decl. ¶ 25. It is possible that CGH-Com contains more than 586 videos of
Plaintiffs' Works, because Plaintiffs have detected more than 1,300 links displaying or
directing to infringing copies of Plaintiffs' Works. Graves Decl. ¶ 25. Based on the sheer
number of videos and the like counts under each video, Plaintiffs believe that hundreds, if
not thousands, of visitors to CGH-Com have accessed and viewed the unauthorized
copies of Plaintiffs' Works. Compl. ¶ 68.

CGH profits from the use of the Works by displaying advertisements on CGH-Com. Compl. ¶ 70. Moreover, CGH's infringement of Plaintiffs' Works has been brazen and willful. Plaintiffs have sent 1,333 takedown notices to CGH via several email addresses, including abuse@cloudflare.com, abuse@ipconnect.services, and domainabuse@tucows.com, but have never received a response. Graves Decl. ¶ 26. Moreover, Plaintiffs do not know CGH's true identity. CGH masks the WHOIS registration data for CGH-Com with a privacy service. Compl. ¶ 60; Lin Decl. ¶ 6. Thus, despite Plaintiffs' enforcement efforts, at least 1,333 links displaying or directing to Plaitinffs' Works still remain live (and the number is likely to grow as Plaintiffs update the GHS Website), allowing visitors to CGH-Com free and unauthorized access to many of the Registered Works. Graves Decl. ¶ 26.

## C. Defendant HQC's Infringing Conduct

Since at least 2018, HQC has been promoting and distributing unauthorized copies of Plaintiffs' Works via HQC-Net. Compl. ¶ 84. HQC's infringing conduct did not come to Plaintiffs' attention until early 2023, when HQC-Net started to pick up more viewer traffic with its growing collection of Plaintiffs' Works and divert more viewers from the GHS Website. Compl. ¶ 84; Graves Decl. ¶ 29.

HQC-Net has multiple ways to locate Plaintiffs' works by their trade name "Gloryhole Swallow," including a search bar allowing viewers to freely search Plaintiffs' Works. Compl. ¶ 85. What's more, HQC-Net provides a side menu category named "SiteRips," which displays videos from various content providers, including Plaintiffs. *See* Compl. ¶ 93. Plaintiffs' Works are showed under a sub-category called "HD Paysites" and tagged with Plaintiffs' trade name, "Gloryhole Swallow." Compl. ¶ 94. As of the day of this filing, HQC-Net contains at least 1,900 links displaying or directing to

5

Plaintiffs' Works. Compl. ¶ 86. Plaintiffs believe that HQC-Net contains at least hundreds of infringing videos of the Works, but HQC-Net does not provide an organic searching function for Plaintiffs to find out the exact number of the infringing videos. *See* Graves Decl. ¶¶ 31–33 (explaining the technical difficulties in determining the exact number of infringing copies on HQC-Net). Based on the sheer number of videos and the like counts under each video, Plaintiffs believe that hundreds, if not thousands, of visitors to HQC-Net have accessed and viewed the unauthorized copies of Plaintiffs' Works. Compl. ¶ 88.

Moreover, HQC's infringement of Plaintiffs' Works has been brazen and willful. Plaintiffs have sent 1,978 takedown notices to CGH via several email addresses, including abuse@hqcollect.me, abuse@iroko.net, and support@nicenic.net, but have never received a response. Graves Decl. ¶ 34. Moreover, Plaintiffs do not know HQC's true identity. HQC masks the WHOIS registration data for HQC-Com with a privacy service. Compl. ¶ 80; Lin Decl. ¶ 7. Thus, despite Plaintiffs' enforcement efforts, at least 1,961 links displaying or directing to Plaintiffs' Works still remain live (and the number is likely to grow as Plaintiffs update the GHS Website), allowing visitors to CGH-Com free and unauthorized access to many of the Registered Works. Graves Decl. ¶ 34.

**D. Harm to Plaintiffs**

Defendants' conduct has caused great financial loss and impairment to Plaintiffs' goodwill. Members of the GHS Website have complained to Plaintiffs about the free, pirated videos they find on the Infringing Websites. Compl. ¶ 101; Graves Decl. ¶ 39. Although Plaintiffs have spent much effort and resources attempting to stop this piracy, the theft has continued, forcing Plaintiffs to take immediate action to enjoin Defendants

from further damaging their business and to better protect their copyrights. Compl. ¶ 10, Graves Decl. ¶¶ 40–52, 55.

## ARGUMENT

### I.   Plaintiffs Have Met the Legal Standard for an *Ex Parte* TRO

Pursuant to Fed. R. Civ. P. 65(b), the court may issue a TRO without notice to the adverse party when the moving party clearly shows (a) immediate and irreparable harm to it before the adverse party can be heard in opposition, and (b) efforts to give notice and reasons why notice should not be required. Although the "[c]ircumstances justifying the issuance of an *ex parte* order are extremely limited," they may be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (internal quotes and citations omitted). They may also be proper where notice "would render fruitless the further prosecution of the action," such as by allowing the defendant to dispose of evidence. *Id.*

The substantive standard for a TRO is the same as for a preliminary injunction. *Merch. Transaction Sys., Inc. v. Necela, Inc.*, No. 02-1954-PHX-MHM, 2010 WL 330346, at *3 (D. Ariz. Jan. 21, 2010). To obtain either, a plaintiff must show that "(1) [it] is likely to succeed on the merits, (2) [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotes and citations omitted). The Ninth Circuit uses a "sliding scale" test, where an injunction may be granted if the movant shows "serious questions going to

the merits" and "a hardship balance that tips sharply toward the plaintiff." *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011).

### A. Plaintiffs Are Likely to Succeed on the Merits

As to preliminary matters, the Court has specific personal jurisdiction over the Defendants arising from their infringing conduct, and this Court is the proper venue for this case. Arizona's long-arm statute permits this Court to exercise personal jurisdiction to the maximum extent permitted by the United States Constitution. Ariz. R. Civ. P. 4.2(a); *see, e.g., A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 892 P.2d 1354, 1358 (1995). Accordingly, this Court may find personal jurisdiction over a defendant as long as it comports with the principles of federal due process. *LNS Enterprises LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065, 1071 (D. Ariz. 2020), aff'd, 22 F.4th 852 (9th Cir. 2022). In the alternative, even if Arizona's long-arm statute does not reach Defendants, Federal Rule of Civil Procedures 4(k)(2) authorizes a district court's exercise of personal jurisdiction over a defendant if (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction of any state court of general jurisdiction; and (3) exercising jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). The due process analysis under Fed. R. Civ. P. 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis except that courts consider contacts with the nation as a whole, rather than the forum state. *Id.* at 462.

The Ninth Circuit conducts the due process analysis under a three-prong test: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises

out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) (internal citations omitted). In copyright infringement cases, personal jurisdiction can be established by "purposeful direction" by a defendant, where the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.*

Here, Defendants have sufficient contacts with the State of Arizona to give rise to specific personal jurisdiction over Plaintiffs' copyright infringement claim. Defendants committed an intentional act by operating the Infringing Websites to promote stolen Works from Plaintiffs, two Arizona companies. Compl. ¶¶ 47, 65, 66, 85, 94. By attracting visitors in Arizona and the United States with free pirated Works, PornEZ and CGH profit from third-party advertisements placed on their websites, and HQC profits from selling VIP access for increased bandwidth and disk space for content downloading. Compl. ¶¶ 52, 70, 89; Graves Decl. ¶¶ 19, 27, 35. Finally, it was foreseeable that Plaintiffs as Arizona companies would be harmed by Defendants' conduct, including harm to their business reputation, and decreased business and profits occurring in Arizona. Compl. ¶¶ 10, 100, 101; Graves Decl. ¶¶ 39, 43.

Venue is also proper. In copyright infringement actions, venue is proper "in the district in which the defendant … resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit interprets this provision to allow venue in any judicial district where the defendant would be subject to personal jurisdiction. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010). Since Defendants are subject to specific personal jurisdiction, this district is also a proper venue.

1    Moving on to the substantive issues, a plaintiff must satisfy two requirements to
2    present a prima facie case of direct copyright infringement: (1) the plaintiff's ownership
3    of the allegedly infringing materials, and (2) that the alleged infringers violate at least one
4    exclusive right of the plaintiff under 17 U.S.C. § 106. *Disney Enterprises, Inc. v.*
5    *VidAngel, Inc.*, 224 F.Supp.3d 957, 969 (2016).

6    Here, the copyright registrations establish prima facie evidence of Fornix's
7    ownership of valid copyrights on the Registered Works. 17 U.S.C. § 410(c); *United*
8    *Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *see also*
9    Compl. ¶ 30. Fornix holds all exclusive rights in the Registered Works under 17 U.S.C §
10   106. Compl. ¶ 32. As the exclusive licensee to distribute and display the Registered
11   Works via the GHS Website, CP Productions can also bring suit to enforce those rights.
12   *See* 17 U.S.C. § 501(b).

13   Defendants, by copying the Works, making derivatives, and displaying and
14   distributing the Works without authorization, infringe Plaintiffs' exclusive rights under
15   17 U.S.C. § 106 (1)-(5). *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th
16   Cir. 2001) (finding violation of the plaintiff's distribution right where the defendant make
17   files searchable and copiable for others to download through a peer-to-peer file-sharing
18   service); *see also Disney*, 224 F. Supp. 3d at 969 (finding violation of the plaintiff's
19   reproduction and public performance rights where the defendant made digital copies of
20   the plaintiff's work and offered it for free streaming on the defendant's website).

21   Defendants' conduct is unjustifiable by any anticipated defenses to a copyright
22   infringement claim. Defendants' identical copies of hundreds of Plaintiffs' Works, which
23   even include Plaintiffs' warning message, exclude the possibility that Defendants created
24   these videos independently. *See* Compl. ¶ 39; Graves Decl. ¶¶ 16, 23, 30. Nor is their

10

conduct protected by fair use. The "fair use" doctrine permits the use of copyrighted materials without the owner's authorization under certain situations. It requires balancing four factors: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The more "transformative" the use is, meaning the defendant uses plaintiff's copyrighted work in a different context or alters it "with new expression, meaning, or message," the more likely such use is fair use. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (internal citations omitted). However, a transformative use can be outweighed by the fact that the defendant's use is commercial in nature, that the defendant uses a large and substantial portion of the plaintiff's work, or that the defendant's use undermines plaintiff's work's market value. *See, e.g., Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1187 (9th Cir. 2012).

Here, all four factors weigh against Defendants. *First*, Defendants' publication of the Works is not a transformative use. Defendants do not affix "new expression, meaning, or message" to these videos, but use exact copies. *See* Graves Decl. ¶¶ 16, 23, 30 (stating that Defendants copied Plaintiffs' Works in full). They do this to divert users from the original source to the Infringing Websites for their own commercial gain or increase in viewership—PornEZ and CGH profit from displaying advertising, and upon information and belief, HQC profits from selling VIP access for increased bandwidth and disk space for content downloading. Compl. ¶¶ 52, 70, 89; Graves Decl. ¶¶ 19, 27, 35. *Second*, the Works are entertainment videos which are creative in nature and closer to the core of intended copyright protection than fact-based works. *Third*, the sheer number of full-length videos published on the Infringing Websites weighs against Defendants. The

11

Infringing Websites display *hundreds* of Plaintiffs' videos. Compl. ¶¶ 47, 67, 86; Graves Decl. ¶¶ 16, 23, 30. *Fourth*, Defendants' unauthorized distribution of the videos seriously undermines Plaintiffs' business in a niche content market, and they have suffered great and ongoing financial and reputational loss as a result. Graves Decl. ¶¶ 52, 53, 55.

**B.  Plaintiffs Are Likely to Suffer Irreparable Harm Absent a TRO**

The Ninth Circuit rejects the presumption of irreparable harm in copyright cases and requires a showing of a likelihood of irreparable harm. *See, e.g., Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011). However, to prevail, a plaintiff "need not prove that irreparable harm is certain or even nearly certain." *See Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011).

Here, Plaintiffs are likely to suffer immediate and irreparable harm if Defendants continue their willful infringement. First, Defendants' infringement has worsened since early 2023, when Plaintiffs noticed that the Infringing Websites have curated a large enough collection of Plaintiffs' Works to pick up more viewer traffic from online search results and thus divert more viewers from the GHS Websites. *See* Graves Decl. ¶¶ 14, 22, 29. Plaintiffs discovered the Infringing Websites recently while the websites were created a few years ago, and the Infringing Websites pose a growing threat as they start appearing among the top search results of "Gloryhole Swallow." Graves Decl. ¶¶ 13, 37. Second, distributing pirated copies of the Works undermines Plaintiffs' ability to control the exclusive use of its copyrighted Works. Graves Decl. ¶ 40. Third, Defendants' conduct damages goodwill that Plaintiffs established in a niche market. It challenges Plaintiffs' pay-to-watch membership system, and Plaintiffs have received numerous complaints from members regarding the Infringing Websites. Graves Decl. ¶ 52. Plaintiffs have witnessed sales drops that coincide with the timing of Defendants' website updates,

although it is difficult or impossible to precisely quantify the financial damages. Graves Decl. ¶¶ 42, 43. Plaintiffs have and will incur an unquantifiable loss given the number of videos involved and the uncertainty of the quantity of illegal distributions. Graves Decl. ¶ 42. Finally, Defendants' conduct poses a threat to Plaintiffs' reputation as a premier producer and distributor of adult video content, causing irreparable damages to their goodwill. Graves Decl. ¶¶ 52, 55; *see also Disney*, 869 F.3d at 866 (finding that the defendant's provision of free streams of the plaintiff's copyrighted works undermined the value of the works and damaged the plaintiff's goodwill).

Plaintiffs are also likely to suffer irreparable harm without a TRO because Defendants are likely to escape liability for their actions by concealing funds or transferring domain names to continue their infringing conduct, while their infringing conduct is causing ongoing harm to Plaintiffs' business and reputation. Graves Decl. ¶ 45. Plaintiffs are forced to file this lawsuit as the last resort—Defendants have ignored thousands of takedown notices from Plaintiffs, and persisted in copying and redistributing the latest videos of Plaintiffs' Works as Plaintiffs update the GHS Website. Graves Decl. ¶¶ 49, 50. Defendants' lack of communications also indicates a strong likelihood that they will not comply with any further demands or court orders. *See* Graves Decl. ¶¶ 20, 26, 34. Furthermore, Defendants artfully mask their true identity by using privacy services to register the domain names of the Infringing Websites. Lin Decl. ¶¶ 5–7. Defendants operate the Infringing Websites anonymously, which makes it easier for them to quickly transfer the Infringing Websites and the underlying domain names to other host servers and registrars, leaving little trace to be tracked with. *See* Graves Decl. ¶ 48. Plaintiffs will continuously suffer from such harm if Defendants are able to use the Infringing Websites or substitutes to persist infringing. *See Disney Enterprises, Inc. v.*

*VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming the district court's decision where the plaintiff was found to sufficiently establish a likelihood of irreparable harm where the infringing website undermined its leverage to negotiate exclusive video-streaming licenses, and that the plaintiff's delay in seeking an injunction was reasonable where the harms caused by the defendant was ongoing and likely to increase absent an injunction).

### C. The Balance of Equities Strongly Favors Plaintiffs

The Balance of equities tips in Plaintiffs' Favor because Defendants have no cognizable interest in operating websites based on knowing and willful copyright infringement. Defendants "cannot complain of the harm that will befall [them] when properly forced to desist from [their] infringing activities." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). Also, Defendants' persistent infringement of the Works is not an isolated incident. Defendants have engaged in their infringing conduct for a few years by profiting from commercial use of Plaintiffs' Works without authorization, and the infringement escalated in recent months to pose a greater threat to Plaintiffs' online presence and their promotion of the GHS Website. Compl. ¶¶ 46, 64, 84; Graves Decl. ¶¶ 14, 22, 29. Specifically, HQC has been operating HQC-Net and copying Plaintiffs' Works since 2018 (without notice to Plaintiffs until recently), and HQC-Net displays a growing collection of Plaintiffs' Works, specifically tagged and categorized with Plaintiffs' trade name "Gloryhole Swallow," along with other copyright owners' works. Compl. ¶ 94. Similarly, PornEZ and CGH has been operating PornEZ-Net and CGH-Com since 2021 (without notice to Plaintiffs until recently) and have already developed a large and growing collection of Plaintiffs' Works. Compl. ¶¶ 46, 64; Graves Decl. ¶ 14, 22, 24. Plaintiffs'

Works are also a significant portion of the videos currently promoted by each of the Infringing Websites. *See* Graves Decl. ¶¶ 18, 25, 31.

Though Plaintiffs acknowledge that the Infringing Websites contain other videos, they believe these videos were also copied without authorization from non-parties that implement a pay-to-view model. Compl. ¶¶ 58, 78, 99; Graves Decl. ¶ 54. Upon Plaintiffs' knowledge and observations in the adult-content-production industry, many copyright owners explicitly prohibit unauthorized copying, republishing, or distributing their works for commercial use. Graves Decl. ¶ 54. Because the Infringing Websites profit from advertisements or selling VIP subscriptions, any use of copyrighted materials on the Infringing Websites, including Plaintiffs' works, is presumed to be unauthorized by the respective copyright owners. Graves Decl. ¶ 54. Defendants' usage of keywords, tags, and/or categories marking the copyright owners' names, including Plaintiffs' trade names, indicates that this conduct is not accidental or isolated. *See Trial Film LLC v. Wu Daoai*, No. CV-21-00984-PHX-JJT, 2021 WL 2949508, at *2 (D. Ariz. July 14, 2021) (temporarily restraining the defendant's entire infringing websites, which contained more than plaintiff's copyrighted videos, as the most narrowly tailored way to halt the plaintiff's irreparable harm).

**D. A TRO Is in the Public Interest**

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Disney*, 869 F.3d at 978 (internal citations omitted). The public interest is well served by enjoining willful infringement of creative works. *See, e.g.*, *Trial Film*, 2021 WL 2949508, at *2.

### E.  An *Ex Parte* TRO is Appropriate

Defendants present many evasive traits that raise the concern that if they had notice—they may cause further damage to Plaintiffs' business by quickly transferring the infringing materials to another domain name or hosting website, thereby mooting the request. *First*, Defendants operate anonymously and conceal their identifying information intentionally. Defendants' identifying information is redacted or masked in WHOIS Data, leaving only several auto-generated or anonymous email addresses available for contact. Compl. ¶¶ 15–18; Lin Decl. ¶¶ 5–7. Moreover, Defendants ignore emails to these addresses. Compl. ¶¶ 56, 75, 90; Graves Decl. ¶¶ 20, 26, 34. *Second*, Defendants use Cloudflare's and ClouDNS's reverse-proxy service to mask the true IP addresses. Compl. ¶¶ 9, 44, 60, 80; Lin Decl. ¶¶ 5–7. *Finally*, given the anonymity of Defendants' operation of the Infringing Websites and the low technical threshold for transferring websites or domain names, Defendants are likely to deactivate and transfer the infringing websites to another domain name or web host upon notice of the lawsuit and request to evade from legal liability. *See* Graves Decl. ¶¶ 48; *see also Trial Film*, 2021 WL 2949508, at *3 (finding that overseas defendants who operated anonymously and communicated solely through emails would likely destroy, move, hide, or otherwise make inaccessible the proceeds of their infringing materials if given notice).

Moreover, Plaintiffs will suffer irreparable harm if this Court does not issue an TRO directing non-parties to temporarily suspend services to the Domain Names and the Infringing Websites. Specifically, Plaintiffs request an TRO directing VeriSign to put the Domain Names on "serverHold" or "serverTransferProhibited" status—temporarily rendering the Infringing Websites inoperable and nontransferable—for the pendency of this lawsuit. Plaintiffs further request an TRO directing Cloudflare to cease its services,

16

including CDN, reverse-proxy, and security services for the Infringing Websites. If Defendants ignored this Court's order and persisted in infringement by transferring the Domain Names and/or the Infringing Websites, Plaintiffs would be required to file amended pleadings or additional lawsuits and keep chasing them. Additionally, Plaintiffs have given notice to VeriSign and Cloudflare on this lawsuit and the TRO application and obtained agreement from VeriSign and Cloudflare to effectuate orders from this Court. *See* Lin Decl. __. Therefore, the issuance of such a TRO will put a stop to the chase and permit Plaintiffs the opportunity to enforce their copyrights without filing successive lawsuits.

Therefore, Plaintiffs urge the Court to issue an *ex parte* TRO enjoining Defendants from: (1) operating or providing any services for the Infringing Websites, namely PornEZ-Net, CGH-Com, and HQC-Net; (2) transferring the Infringing Websites or the underlying domain names to other hosting services or registrars; and (3) copying, displaying, distributing, or make Plaintiffs' Works otherwise available to third parties without Plaintiffs' authorization. Plaintiffs further request the Court to direct VeriSign and Cloudflare, non-parties who agreed to effectuate orders from this Court upon determination that the Domain Names and the Infringing Websites are dedicated to infringement, for the terms further set forth in the Proposed TRO filed herewith. *See* Lin Decl. ¶¶ 11–13, Exhibits 7, 8 to Lin Decl. (providing that Plaintiffs have met and conferred with VeriSign and Cloudflare and obtained their agreement in writing to effectuate orders from this Court directing them to suspend services to the Domain Names and the Infringing Websites). At that point, the TRO would prevent Defendants from destructing the purposes of this lawsuit, and Plaintiffs would be protected against further and ongoing irreparable harm. Such order would then give Defendants notice and

17

1  an opportunity to quickly correct any potentially erroneous ruling—in the unlikely event

2  they elect to appear and contest Plaintiffs' claim.

3  **F.  Minimal Security Should be Required by Plaintiffs**

4  Fed. R. Civ. P. 65(c) requires plaintiffs give "security in the amount that the court

5  considers proper to pay the costs and damages sustained by any party found to have been

6  wrongfully enjoined or restrained." District courts have the discretion to set the bond

7  amount or waive the requirement if there is no realistic likelihood of harm to the

8  defendant. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). The

9  circumstances in this case justify a waiver. As stated above, Plaintiffs are likely to

10  prevail, and Defendants cannot claim harm for loss based on willful and ongoing

11  infringement. There is nothing close to legitimate about Defendants' conduct and

12  Plaintiffs respectfully request the Court waive the security. *See Gorbach v. Reno*, 219

13  F.3d 1087, 1092 (9th Cir. 2000). In the alternative, minimal security of $100 is

14  appropriate.

15  **II.  The Court Should Allow Alternative Service for Defendants**

16  Plaintiffs also ask this Court for leave to effect service of the Summons and the

17  Complaint by alternative means upon Defendants. Specifically, for Plaintiffs' counsel to

18  serve PornEZ via the email:

19  463fd821828b487185219fc6b72c2df0.protect@withheldforprivacy.com; to serve CGH

20  via the email and form: domainabuse@tucows.com;

21  https://tieredaccess.com/contact/255653ac-4642-4059-b66a-813ee7feafe4; and to serve

22  HQC via the email addresses at domain@nicenic.net, abuse@nicenic.net, or

23  support@nicenic.net. *See* Lin. Decl. ¶¶ 5–7.

24

If Defendants are United States residents, Ariz. R. Civ. P. 4.1(k) authorizes this Court to order alternative service upon the plaintiff's showing that traditional means of service are impracticable. Ariz. R. Civ. P. 4.1(k)(1); *see also BMO Harris Bank, N.A. v. Guthmiller*, No. CV-14-00275-PHX-JAT, 2014 WL 2600362, at *1 (D. Ariz. June 10, 2014) (granting alternative service at Defendant's email address). As elaborated above, Plaintiffs cannot obtain any ascertainable information to reveal Defendants' residency or place of business. Plaintiffs can only rely on the few email addresses to effectuate service without discovery to reveal Defendants' identities. Thus, Plaintiffs are forced to seek this Court's permission for alternative service since no traditional means of service is viable to Plaintiffs.

On the other hand, Fed. R. Civ. P. 4(f) permits alternative service methods to a foreign defendant. Under Rule 4(f), service may be effected upon individuals in foreign countries by any of three mechanisms: (1) "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention..."; (2) "by a method that is reasonably calculated to give notice," for example, "as the foreign authority directs in response to a letter rogatory or letter of request"; and (3) "*by other means not prohibited by international agreement, as the court orders.*" Fed. R. Civ. P. 4(f)(1)– (3) (emphasis added). To obtain the Court's permission to utilize Rule 4(f)(3), plaintiffs must show that "the facts and circumstances of the present case necessitate . . . district court intervention." *Rio Props. V. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (internal citations omitted). The Ninth Circuit has held that alternative service under Rule 4(f)(3) does not require attempted service by other methods before resorting to court-ordered service under this rule. *Id.* at 1015–16. Such alternative service should be reasonably calculated to give the defendant notice and

1    an opportunity to be heard, to comport with constitutional notions of due process. *Id.* at

2    1016. Yet, due process only requires that service must be reasonably calculated, under all

3    circumstances, to apprise interested parties of the pendency of the action and afford them

4    an opportunity to present their objections. *Liberty Media Holdings, LLC v. Vinigay.com*,

5    No. CV-11-0280-PHX-LOA, 2011 WL 7430062, at *1 (D. Ariz. Mar. 3, 2011)

6    (permitting service by e-mail under due process) (quoting *Rio Props.*, 284 F.3d at 1016,

7    1017).

8           In the instant case, service via email addresses which Defendants used to register

9    the Domain Names is reasonably calculated to apprise Defendants of this action and

10   application. Defendants acquired and accessed the Domain Names electronically and

11   must have provided at least one valid email address as means of contact, and Defendants

12   are required to provide accurate registrant information for the Domain Names and

13   promptly update such information to reflect any changes *See* Lin Decl. ¶ 15. However,

14   such information is withheld for privacy, and the WHOIS records of the Domain Names

15   provide email addresses or contact forms generated by the respective registrar as

16   Defendants' contact email. Lin Decl. ¶¶ 5–7. Under the circumstances, there are no other

17   viable means to serve Defendants, because Plaintiffs could not obtain any identifying

18   information without discovery. Thus, it is fair to serve Defendants in this manner.

19                                     **CONCLUSION**

20          Plaintiffs respectfully request an Order: (1) directing Defendants to (a) deactivate

21   and prevent the transfer of the domain names used by the Infringing Websites; (b)

22   deactivate and permanently delete the Infringing Websites; (c) delete all copies of

23   Plaintiffs' copyrighted works, which have been uploaded to any third-party websites

24   associated with the Infringing Websites; and (d) cease providing all services for the

Infringing Websites; (2) directing VeriSign to put the Domain Names on "serverHold" or "serverTransferProhibited" status for the pendency of this lawsuit; (3) directing Cloudflare to terminate services for the Infringing Websites for the pendency of this lawsuit; (3) setting a show cause hearing why the TRO should not become a preliminary injunction; and (4) allowing alternative service upon Defendants.

Dated: June 29, 2023
      Brooklyn, New York

Respectfully submitted,

**LEWIS & LIN LLC**

David D. Lin, Esq.
(*pro hac vice* forthcoming)
77 Sands Street, 6th Floor
Brooklyn, NY 11201
David@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Plaintiffs Fornix Holdings LLC and CP Productions, Inc.*

21