**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fornix Holdings LLC, et al., | No. CV-23-01200-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Defendants. | |

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs Fornix Holdings LLC and CP Productions, Incorporated ("Plaintiffs") move for default judgment against Defendants John Doe #1 d/b/a/ pornez.net; John Doe #2 d/b/a/ cumgloryhole.com; and John Doe #3 d/b/a/ hqcollect.net ("Defendants"). (Doc. 33.) Defendants have not responded to the motion for default judgment. For the following reasons, the motion will be granted.

**I.     BACKGROUND**

As the Clerk of Court has entered default (Doc. 31), the Court takes the complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

Plaintiffs are adult entertainment companies that create videos and publish them on the internet. (*See* Doc. 1 ¶¶ 25-26, ¶ 28.) Plaintiff CP Productions, Incorporated produces and publishes the videos on its website. (*Id.* ¶¶ 25-26.) The website has a paywall that

requires users to purchase a membership before viewing the videos. (*Id.* ¶ 35.) Plaintiff Fornix Holdings LLC is the sole copyright holder of the videos. (*Id.* ¶ 32.) It protects its rights through actions like the one here. (*See id.* ¶ 28.) As the sole copyright holder, Fornix Holdings exclusively licenses the videos to CP Productions. (*Id.* ¶ 31.)

Defendants also operate and maintain adult entertainment websites. (*Id.* ¶ 41, ¶ 59, ¶ 79.) The difference, however, is Defendants do not make their own videos. (*See id.*) Instead, they take videos from CP Productions' website and publish them on their own for free. (*Id.* ¶ 46, ¶ 64, ¶ 84.) Those free videos harm Plaintiffs by diverting customers from CP Productions' website. (*Id.*)

This lawsuit attempts to shut down Defendants' websites. It asserts claims of copyright infringement and contributory copyright infringement. (*Id.* at ¶¶ 103-16.) The relief sought is "a judgment declaring [Defendants] directly and willfully infringed Plaintiffs' copyrights"; actual and/or statutory damages under 17 U.S.C. § 504; disgorgement of profits related to Plaintiffs' videos; attorney's fees; and deactivation of Defendants' websites. (*See id.* at 21-22.)

After receiving Plaintiffs' lawsuit, the Court issued a temporary restraining order (Doc. 10) and permitted Plaintiffs to effectuate alternative service on Defendants (Doc. 9.) Alternative service was appropriate because Defendants appeared to intentionally conceal their identities in corporate filings, thereby making it difficult for Plaintiffs to enforce their copyrights. (*See* Doc. 1 ¶ 9.) Plaintiffs effectuated alternative service on July 6, 2023. (Doc. 15.) When Defendants did not appear at the preliminary injunction hearing held on July 26, 2023, the Court granted Plaintiffs' request for a preliminary injunction. (Docs. 21, 23.) Defendants never responded to Plaintiffs' complaint. Plaintiffs filed an application for entry of default. (Doc. 30.) The Clerk of Court entered default. (Doc. 31.) Plaintiffs now move for default judgment. (Doc. 33.)

## II. DISCUSSION

### A. Jurisdiction, Venue, and Service

"When entry of judgment is sought against a party who has failed to plead or

otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). This requires an examination of subject matter jurisdiction, personal jurisdiction, venue, and service of process.

Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over claims arising out of federal law. Plaintiffs assert claims under 17 U.S.C. § 501 for copyright infringement and 17 U.S.C. § 106 for contributory copyright infringement. (Doc. 1 ¶¶ 103-16.) These claims arise under federal law and are within the Court's subject matter jurisdiction. *See* 28 U.S.C. § 1331.

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017). Plaintiffs argue the Court has specific personal jurisdiction because Defendants' websites "deliberately target[ed] Plaintiffs, two Arizona entities, and because their intentional infringement of Plaintiffs' copyrights cause[d] foreseeable damages . . . within the State of Arizona." (Doc. 1 ¶ 21); *see also Calder v. Jones*, 465 U.S. 783, 789 (1984) (holding the "effects" of harm may establish personal jurisdiction). This allegation is enough to demonstrate harm in Arizona. But personal jurisdiction requires "something more." *See Will Co., Ltd. v. Lee*, 47 F.4th 917, 924 (9th Cir. 2022). A website must be "expressly aimed" at the forum state. *See id.* at 922. Express aiming is usually shown through actively "appeal[ing] to and profit[ing] from" forum state consumers. *See id.* Here, Plaintiffs do not allege Defendants' websites appeal to and profit from customers in Arizona. (*See* Doc. 1 ¶ 21.) Without such an allegation, Defendants' websites are mere "passive operation[s] . . . insufficient to demonstrate express aiming." *See id.* at 922. They do not establish personal jurisdiction.

Plaintiffs alternatively argue the Court has general personal jurisdiction over Defendant because "Defendants accessed and downloaded copyrighted video content from [CP Productions' website], which contains an agreement to submit to the exclusive jurisdiction of the federal and state courts of Arizona for any disputes concerning Plaintiffs' intellectual property rights." (*See* Doc. 1 ¶ 22); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d

606, 614 (9th Cir. 2016) ("[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged."). Forum selection clauses are presumptively valid and "should control except in unusual cases." *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018); *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). Defendants agreed to litigate intellectual property disputes in Arizona by downloading videos from CP Productions' website. (*See* Doc. 1 ¶ 22.) That is enough to establish personal jurisdiction.

Federal law determines the appropriate venue for a lawsuit. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 57 (2013). Under 28 U.S.C. § 1400(a), "civil actions . . . relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." The Ninth Circuit Court of Appeals interprets this language as allowing venue "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997)). Same as personal jurisdiction, the forum selection clause on CP Productions' website establishes venue. (Doc. 1 ¶ 22.)

Service is normally executed on a corporation "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized . . . to receive service of process" Fed. R. Civ. P. 4(h)(1)(B). The Court, however, allowed Plaintiffs to effectuate alternative service because Defendants appeared to intentionally conceal their identities in corporate filings, making it difficult for Plaintiffs to enforce their copyrights. (*See* Doc. 1 at 3.) Alternative service, under these circumstances, does not violate due process. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (noting alternative service depends on "the particularities and necessities of a given case"). Plaintiffs effectuated service through alternative means on July 6, 2023, and service was properly executed on that date. (*See* Doc. 15.) The Court has jurisdiction over this action.

### B. Default Judgment

Once default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.2d 922, 923 (9th Cir. 2009) (noting the two-step process of default judgment: "Entering a Default" and "Entering a Default Judgment"). Seven factors determine whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *NewGen, LLC*, 840 F.3d at 616. The party seeking a default judgment "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct. 18, 2021). It also bears the burden of proving all damages. *Szabo v. Sw. Endocrinology Assocs. PLLC*, No. CV-20-01896-PHX-DWL, 2021 WL 3411084, at *2 (D. Ariz. July 27, 2021); *see also Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### 1. The First, Fifth, Sixth, and Seventh *Eitel* Factors

Defendants have not yet participated in this litigation. This traditionally means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (noting that the first, fifth, and sixth *Eitel* factors support granting default judgment because a denial would prejudice the plaintiff, there was no dispute over material facts, and the default was not due to excusable neglect).

The first factor weighs in favor of default judgment because denying Plaintiffs' Motion will leave them "without other recourse for recovery" due to Defendants' failure to appear in the suit. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

Cal. 2002). The fifth factor also weighs in favor of default judgment because "all well-pleaded facts in the complaint are taken as true" and there is no genuine dispute of material fact that would preclude granting the motion for default judgment. *Id.* Additionally, the sixth factor tips in favor of entering default judgment because Defendants were properly served. (Docs. 1, 9, 15.) *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (finding that a defendant's failure to answer is likely not a result of excusable neglect if the defendant is served properly).

Finally, although the seventh factor—which considers the policy favoring a decision on the merits—generally weighs against default judgment, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (quotation omitted). As a result, this factor is not sufficient to preclude the entry of default judgment in this case.

### 2. The Second and Third *Eitel* Factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (quotation omitted). Plaintiffs' complaint makes two claims: copyright infringement against all Defendants and contributory copyright infringement against Defendant John Doe #3 d/b/a/ hqcollect.net ("Defendant HQN"). Both claims will be analyzed separately.

#### i. Copyright Infringement

A claim for copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Registration is prima facie evidence of a valid copyright. 17 U.S.C. § 410(c). The term "original" means "the work was independently created by the author" and "possesses at least some minimal degree of creativity." *Feist Pubs. Inc.*, 499 U.S. at 345.

The complaint alleges Plaintiff CP Productions has produced and distributed over 1,125 videos. (Doc. 1 ¶ 27.) Fornix Holdings has registered copyrights for 234 of those videos.[1] (Doc. 1 ¶ 30; Doc. 33-1 at 2.) The remaining 891 videos are unregistered, but Fornix Holdings is "currently in the process of registering them with U.S. Copyright Office." (*See* Doc. 1 ¶ 2, ¶ 31.) Attached to the complaint is a table listing the registration number, video title, and registration date for each registered video. (*See* Doc. 1-5 at 2-7.)

The complaint further alleges Defendants' websites contain unauthorized full-length copies of Plaintiffs' videos. (*See id.* ¶ 38, ¶ 46, ¶ 64, ¶ 84.) It explains Defendants accessed the videos behind CP Productions' paywall, downloaded the videos, and uploaded them to their own websites. (*Id.* ¶ 22.) There are between 400-586 infringing videos and 405-1900 links "directing to infringing videos" across Defendants' websites. (*Id.* ¶ 56, ¶ 67, ¶ 90.) Additional tables attached to the complaint show URL links to the infringing content on Defendants' websites. (Docs. 1-5 at 14-20, 29-51, 59-92.)

An infringement claim requires ownership of a valid copyright. *Feist Pubs., Inc.*, 499 U.S. at 361. The complaint shows prima facie evidence of ownership for 234 videos. This is through the attached table listing each video's copyright registration number. *See* 17 U.S.C. § 410(c); (Doc. 1-5 at 2-7.) The remaining 891 videos, however, do not have registered copyrights. (*See* Doc. 1 ¶ 31.) Plaintiffs instead allege ownership is shown through Fornix Holdings "registering [them] with the U.S. Copyright Office." (*See* Doc. 1 ¶ 2.)

Copyright registration does not affect Plaintiffs' ownership of the videos. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1154 (9th Cir. 2019) (stating ownership vests with the "party who actually creates the work, that is, the person

---

[1] Plaintiffs' motion for default judgment states Fornix Holdings now holds 376 registered copyrights. (Doc. 33-1 at 2.) The motion, however, does not provide any evidentiary support for this statement, and the Court declines to accept it as true. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (finding "facts which are not established by the pleadings of the prevailing party . . . are not binding and cannot support the [default] judgment"). The Court further declines to exercise its discretionary authority to hold an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The facts alleged in the complaint are sufficient to grant default judgment and give Plaintiffs' their requested relief. *See infra* Sections II.B.4, II.C.

who translates an idea into a fixed, tangible expression entitled to copyright protection"). But it does affect their ability to bring an infringement action here. "[N]o civil action for infringement of [a] copyright . . . shall be instituted until preregistration or registration of [a] copyright claim has been made in accordance with [17 U.S.C. § 408]." 17 U.S.C. § 411(a). This means registration acts as an administrative exhaustion requirement Plaintiffs must satisfy before enforcing their ownership rights. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). The complaint acknowledges registration has not occurred. (*See* Doc. 1 ¶ 31.) Moreover, this is not a situation where preregistration of a copyright applies. *See Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301 (noting preregistration applies in "limited circumstances" where "a copyright owner is preparing to distribute a work of a type vulnerable to predistribution infringement"). Plaintiffs have not shown the necessary prerequisite to assert copyright infringement for all 1,125 videos. *See Ronald Norris*, 2021 WL 4844116, at *2 (moving party bears the burden of providing a complaint sufficient on its face). Their infringement claim may proceed for the 234 registered videos, but it fails for the remaining 891.

After finding valid ownership, a copyright infringement claim requires "copying of constituent elements of the work that are original." *Feist Pubs., Inc.*, 499 U.S. at 361. This analysis normally "contains two separate components: copying and unlawful appropriation." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin* ("*Skidmore*"), 952 F.3d 1051, 1064 (9th Cir. 2020) (internal quotation marks omitted). Yet when a website "engage[s] in the wholesale reproduction and distribution of copyrighted works," the analysis is more straightforward. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). The requirement for "copying of constituent elements" becomes demonstrating "the alleged infringers violate[d] at least one exclusive right granted to the copyright holder[]." *See id.*; *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989) ("The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights . . . ."). Uploading and downloading copyrighted materials can infringe on a holder's exclusive rights. *Columbia Pictures Indus. v. Fung*, 710 F.3d

1020, 1034 (9th Cir. 2013); *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1050 (9th Cir. 2020) (tying *Fung* to the second element of a copyright infringement actions).

The complaint alleges Defendants' websites contain full-length copies of Plaintiffs' registered videos. (*See* Doc. 1 ¶ 38, ¶ 46, ¶ 64, ¶ 84.) It further alleges Defendants accessed and downloaded the videos without Plaintiffs permission. (*See id.* ¶ 22.) These allegations show Defendants violated Fornix Holdings' exclusive rights to distribution and reproduction. *See Columbia Pictures Indus.*, 710 F.3d at 1034. The complaint sufficiently alleges a copyright infringement claim for the 234 registered videos.[2]

### ii.    Contributory Copyright Infringement

A claim for contributory copyright infringement requires (1) "knowledge of a third party's infringing activity"; and (2) actions that "induce[], cause[], or materially contribute[] to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).

The complaint alleges Defendant HQN's website operates "mainly for . . . encouraging and facilitating copyright infringing conduct." (*See* Doc. 1 ¶ 93.) It explains Defendant HQN collects content from other adult entertainment providers who use pay-to-watch models and uploads the content to its own website for users to freely access or download. (*See id.* ¶¶ 92-93.) Specifically for Plaintiffs, the complaint alleges Defendant HQN downloaded videos from CP Productions' website and uploaded them to be freely accessed or downloaded on its site. (Doc. 1 ¶ 22, ¶ 87.) Defendant HQN's website "displays the number of users who have downloaded [Plaintiffs'] video[s]." (*See id.* ¶ 88.) Based on the quantity "of videos and the number of users who have downloaded" them,

---

[2] Plaintiffs' complaint seeks "a judgment declaring [Defendants] directly and willfully infringed Plaintiffs' copyrights" and enhanced damages for a willful violation under 17 U.S.C. § 504. (Doc. 1 at 21.) But the motion for default judgment states Plaintiffs "are not asking for monetary relief, only injunctive relief," because they cannot "confirm the exact extent of [infringing] conduct" and are unable "to sufficiently identify the responsible parties due to their efforts to conceal their identities." (*See* Doc. 33-1 at 10.) Finding a willful copyright violation would only affect the monetary damages Plaintiffs can recover. *See* 17 U.S.C. § 504(c). Plaintiffs' decision to not pursue monetary damages negates the need to consider willfulness.

1  Plaintiffs believe hundreds, if not thousands, of visitors have downloaded unauthorized
2  copies off Defendant HQN's website. (*See id.*)

3  The knowledge requirement asks whether a secondary infringer knows or has reason
4  to know of direct infringement by a third party. *See A&M Recs., Inc.*, 239 F.3d at 1020.
5  Downloading unauthorized videos is direct infringement. *Columbia Pictures Indus.*, 710
6  F.3d at 1034. The allegations Defendant HQN uploaded Plaintiffs' videos to its website,
7  made them available for download, and tracked the number of downloads by its users
8  shows actual or constructive knowledge. *See A&M Recs., Inc.*, 239 F.3d at 1020.

9  The material contribution requirement considers whether a defendant's activity
10 "substantially assists" direct infringement. *Louis Vuitton Malletier, S.A. v. Akanoc Sol.,*
11 *Inc.*, 658 F.3d 936, 943 (9th Cir. 2011). By its very nature, a website engaging "in the
12 wholesale reproduction and distribution of copyrighted works" materially contributes to
13 copyright infringement. *See A&M Recs., Inc.*, 239 at 1013, 1022. Such websites provide
14 support services to the third-party infringers by giving them easy access to copyrighted
15 materials. *See id.* at 1022. The allegation Defendant HQN's website operates "mainly
16 for . . . encouraging and facilitating copyright infringing conduct" shows material
17 contribution. (*See* Doc. 1 ¶ 93.) The complaint sufficiently alleges a contributory copyright
18 infringement claim.

19 Having found viable claims of copyright infringement and contributory copyright
20 infringement, the only lingering question is whether Plaintiffs' attempt to allege
21 infringement for 1,125 videos—when only 234 have registered copyrights—sways the
22 second and third *Eitel* factors. The Court finds it does not. "Copyright infringement is
23 presumed to give rise to irreparable injury." *Twentieth Century Fox Film Corp.*, 438 F.
24 Supp. 2d at 1072. This is especially true for digital works distributed over the internet,
25 where infringement from one individual can result in exponential, rather than linear,
26 infringement from others. *See id.* at 1073 n.2. The harm caused by Defendants'
27 infringement warrants resolving this matter. The second and third *Eitel* factors weigh in
28 favor of default judgment.

### 3. The Fourth *Eitel* Factor

The fourth *Eitel* factor considers the amount of money at stake in relation to the seriousness of a defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the amount at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp.*, 438 F. Supp. 2d at 1071. Allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Geddes*, 559 F.2d at 560. A court, however, has "wide latitude" in determining the amount of damages to award upon default judgment. *HTS, Inc. v. Boley*, 945 F. Supp. 2d 927, 947 (D. Ariz. 2013) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

Plaintiffs' complaint originally sought monetary damages and injunctive relief. (*See* Doc. 1 at 21-22.) Their motion for default judgment, however, states they now only seek injunctive relief. (Doc. 33-1 at 10.) The Court finds this relief is reasonable given the seriousness of Defendants' infringement and the circumstances of this case. The fourth *Eitel* factor favors the entry of default judgment.

### 4. Summary of *Eitel* Factors

After review of the complaint, the motion for default judgment, and the *Eitel* factors, the Court finds factors one through six weigh in favor of entering default judgment. The final factor—the policy favoring a decision on the merits—weighs against default judgment. But this alone does not outweigh the strong interests present in the other facts. The Court concludes Plaintiffs are entitled to a default judgment.

## C. Injunctive Relief

The only remaining issue is Plaintiffs' entitlement to injunctive relief. Plaintiffs request a permanent injunction and for transfer of Defendants' domain names into Plaintiffs' possession. (Doc. 33-1 at 12, 14.)

### 1. Permanent Injunction

Section 502(a) of the Copyright Act allows "[a]ny court having jurisdiction of a civil action under this title . . . [to] grant temporary and final injunctions on such terms as

it may deem reasonable to prevent and restrain infringement of a copyright." A permanent injunction requires a plaintiff demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs argue a permanent injunction will mitigate the significant risk of future infringement posed by Defendants. (*See* Doc. 33-1 at 13.) The Court finds Plaintiffs have suffered an irreparable injury from Defendants' copyright infringement. *See Twentieth Century Fox Film Corp.*, 438 F. Supp. 2d at 1072. The Court further finds Defendants' infringing activity occurred over the internet and injunctive relief is the only remedy to compensate Plaintiffs. *See id.* at 1073 n.3. This means the first and second elements of a permanent injunction have been met. For the third and fourth elements, the Court finds Defendants' efforts to conceal their identities in corporate filings tips the balance of hardships in favor of Plaintiffs. Defendants' actions also mean the public will not be harmed by a permanent injunction. All four elements have been met. Plaintiffs are entitled to a permanent injunction.

### 2.  Transfer of Domain Names

Other courts have transferred domain names as part of their relief for copyright infringement. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500-01 (S.D.N.Y. 2018) (collecting cases). Section 502(a) of the Copyright Act allows courts to craft injunctive relief "to prevent and restrain infringement of copyright." Courts normally view transfer as "giving practical effect to [a] [p]ermanent [i]njunction. *See, e.g.*, *Warner Bros. Enter., Inc. v. Vega*, CV 11-598 SJO (SPx), 2012 WL 13008442, at *5 (C.D. Cal. Mar. 29, 2012).

Plaintiffs argue "there is a clear risk that [Defendants'] infringing behavior will resume," and transferring Defendants' domain names is therefore appropriate. (Doc. 33-1

1   at 17.) The Court finds Defendants have appeared to deliberately hide their identities on
2   corporate filings and have ignored hundreds of takedown notices lodged by Plaintiffs.
3   (Doc. 1 ¶ 56, ¶ 75, ¶ 90.) Defendants continued their evasive behavior by not participating
4   in this litigation, despite being served with alternative service. The Court finds this
5   behavior indicates Defendants likely will continue their infringing activity irrespective of
6   an order to stop. To give practical effect to the Court's permanent injunction, the Court will
7   also order Defendants' domain names transferred to Plaintiffs.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** granting the Motion for Default Judgment (Doc. 33).

**IT IS FURTHER ORDERED** a permanent injunction will issue by separate order.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to enter judgment in Plaintiffs' favor and close this case.

Dated this 29th day of April, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge